IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

KAREEM MATTHEWS

Petitioner

v.

UNITED STATES OF AMERICA

Respondent

CR 02-026T

CV 05-52T

**MOTION FOR APPOINTMENT OF COUNSEL FOR INDIGENT PETITIONER**

The Petitioner, Kareem Matthews, moves this Court appoint counsel to represent the indigent petitioner in this matter. The petitioner is indigent, and cannot afford the services of an attorney. The issues in this case are complex, and involve important constitutional arguments. The defendant/petitioner told his sentencing counsel to file a prompt notice of appeal, within 10 days of the defendant/petitoner's receipt of his sentence. The petitioner's counsel failed to file his appeal. In Roe v. Flores-Ortega, 528 U.S. 470, 477-78, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000), the Supreme Court of the United States declared that a lawyer is ineffective if he fails to follow a criminal defendant's express instructions to file a

notice of appeal. In U.S. v. Garrett, 402 F.3d 1262 (10th Cir. 2005), the Court of Appeals for the Tenth Circuit recently held that an evidentiary hearing was required to determine if a defendant's counsel failed to file a direct appeal despite the defendant's specific request. The defendant/petitioner needs to be represented by a skilled, competent attorney who is qualified to argue the important constitutional issues in this case. The government raises the issue that the petitioner's habeas action under § 2255 may be time-barred. But the defendant counters this argument by stating that, under federal law, the petitioner's action is not time-barred, because he first discovered his lawyer had not filed his appeal only in January of 2005, and therefore, under 28 U.S.C. § 2255, the one-year period of limitation applicable to the defendant begins on: "the date on which the facts supporting the claim or claims presented could have been discovered through the use of due diligence." The government's position on this issue is that the defendant's § 2255 Petition is time-barred because he has failed, in their opinion, to file his petition within one year of the date on which his conviction became final. But the Supreme Court of the United States has long held that, in the case where a criminal defendant has been denied his Sixth Amendment right to effective assistance of counsel, the remedy for such violation of the defendant's fundamental constitutional right is to place the defendant, as best as

possible, back in the position he would have been in if his Sixth Amendment right to effective of counsel had not been violated. See: Santobello v. New York, 404 U.S. 257, 30 L.Ed.2d 427, 92 S.Ct. 495 (1971). The seminal case of Roe v. Flores-Ortega, 528 U.S. 470, 477-78, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000), deals specifically with a case analagous to the defendant's case. In Roe, the Supreme Court found that a defendant's action for relief cannot be time-barred by a California statute that required a notice of appeal be filed within 60 days of a defendant's conviction, if the delay was caused by the defendant's counsel's failure to follow the defendant's express instruction to file a notice of appeal. The government in this case proposes to repeal Roe and substitute in its place a cruel Catch-22 situation where a defendant is "simply out of luck" when he suffers from the ineffectiveness, malpractice, malfeasance, and negligence of his attorney, when his attorney fails to follow his express instruction to file a notice of appeal. See: Government's Response to Defendant's Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255, p. 2. Under the government's perverse logic, no prisoner who discovers his lawyer has abandoned his appeal, in contradiction to the express instruction of the defendant to his counsel to pursue his appeal, can ever find justice in our courts to remedy the egregious violation of his Sixth Amendment right to effective assistance of counsel,

as long as the lawyer's malfeasance, negligence and malpractice goes undiscovered for one year and a day after the defendant's judgement becomes final, i.e., one year and eleven days after his sentencing, in the case where no notice of appeal has been filed. We must be thankful that our District, Appellate, and Supreme Courts have taken a different view of this matter than the view expressed in the Government's Response to Defendant's Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255 (p. 2.).

The government argues, in its Government's Response to Defendant's Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255 (p. 6), that: "Even if the Petitioner's claims were not barred, the defendant's attorney['s] [sic] failure to file an appeal does not entitle the petitioner to relief," because "Matthews suffered no prejudice due to no appeal having been filed." The government's argument in this case is woefully unaware of the current law on this matter. The government fails to understand that the Supreme Court has already stated, in Roe v. Flores-Ortega, 528 U.S. 470, 477-78, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000), that the failure of an attorney to follow the express instruction of his client to file a notice of appeal does entitle the petitioner to relief. Specifically, the relief required is the granting of the defendant/petitioner his right to direct appeal. In fact, the Supreme Court and the District Courts have held that,

even if the District Court decides the appeal has no merit, in such a case the defendant's appeal must still be allowed! The paucity of the government's legal scholarship and awareness of United States Supreme Court law in this matter, a expressed in the Government's Response to Defendant's Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255 (p. 6), is astonishing. The government seems to believe that such a fundamental violation of a defendant's rights is merely a "technical violation." Government's Response to Defendant's Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255 (p. 6). But the Supreme Court of the United States, in Roe v. Flores-Ortega, 528 U.S. 470, 477-78, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000), has expressed their opinion that a lawyer who violates his Sixth Amendment duty has caused the violation of a fundamental right, and therefore the situation must be remedied by allowing the defendant to argue his appeal, regardless of the merits of his appeal. The law books are full of cases where District and Appellate Courts have granted relief to such defendants, who have been wronged by their attorneys. Witness Wessinger v. Cain, 358 F.Supp.2d 523 (M.D.La. 2005), a recent case involving a petitioner who was abandoned by his post-conviction counsel. Coleman v. Thompson, 501 U.S. 722, 749-50 (1991) discussed the habeas review of a proceedurally barred claim. The Coleman Court found that, if the petitioner demonstrates cause for the default, and

shows actual prejudice as a result of the alleged violation of federal law, or demonstrates that failure to consider the claim will result in a fundamental miscarriage of justice, then the petitioner is due consideration of his claim. In Brandon v. United States, 89 F.Supp.2d 731, 734 (E.D.Va. 2000), a petitioner learned of the outcome of his appeal after the time to apply for further review had expired. We may suppose that the government would argue that such a defendant was "simply out of luck."

Under Rule 8(c) of the Rules Governing Section 2255 Proceedings, the appointment of counsel is mandatory for an indigent noncapital prisoner when "an evidentiary hearing is required," and when the indigent petitioner moves the Court appoint counsel to represent the indigent petitioner. U.S. v. Garrett, 402 F.3d 1262 (10th Cir. 2005) tells us that an evidentiary hearing is required to determine if counsel failed to file a direct appeal despite the defendant's specific request. U.S. v. Iasiello, 166 F.3d 212, 213 (3d Cir. 1999), informs us that: "All of the Circuits to consider the issue acknowledge that, when an evidentiary hearing is required, appointment of counsel for indigents is mandatory under Rule 8(c)."

Many cases, including Alford v. United States, 709 F.2d 418 (5th Cir. 1983), show us that a defendant deserves to have counsel appointed to represent him in a case that is a factually complex case, a case involving "conflicting testimony," in which the truth is more likely to "be

exposed where both sides are represented by those trained in the presentation of evidence." Maclin v. Freake, 650 F.2d at 888. Hodge v. Police Officers, 802 F.2d at 61, tells us that when "conflicting evidence implicating the need for cross-examination will be the major proof presented," this requires the Court to appoint an attorney for a defendant because the issue of determining credibility is a task best suited to be undertaken by a skilled advocate for the defendant. Whisenant v. Yuan, 739 F.2d 160, 163 (4th Cir. 1984) holds that, in such a case, a defendant needs to represented by a court-appointed lawyer for the indigent defendant when a pro se litigant's version of events sharply conflicts with another individual's version "so that the outcome of the case depends largely on credibility." Ulmer v. Chancellor, 691 F.2d at 213; and Manning v. Lockhart, 623 F.2d 536, 540 (8th Cir. 1980) require appointment of counsel in habeas actions when there is a question of the credibility of witnesses and the case presents serious allegations of fact. Hughes v. Joliet Correctional Center, 931 F.2d at 429, informs us that a "layman's need for a lawyer is most acute when a case reaches the stage at which evidence must be obtained and presented," and that the "suit had reached that stage when the defendants moved for summary judgement, since by submitting evidence with their motion the defendants shifted to the plaintiff the burden of producing his own evidence." United States ex rel. Marshall v. Wilkins, 338

F.2d 404, 406 (2d Cir. 1964), held that appointment of counsel for the petitioner in a habeas action is appropriate if an evidentiary hearing is required.

The law is clear: an evidentiary hearing is required in this case, and thus appointment of counsel, under the Rules Governing Section 2255 Proceedings, is mandatory. Thus the defendant/petitioner prays the Court grant him a court-appointed attorney to represent the defendant/petitioner in this matter. The evidentiary hearing shall allow the Court to weigh the evidence supporting his claim that his counsel violated his Sixth Amendment right to effective assistance of counsel when the defendant/petitioner's counsel ignored the defendant's express instruction to file a notice of appeal.

The arguments to be made in the future concerning the appellate issues of the defendant should not be an issue in this matter. This matter concerns only the defendant/petitioner's motion that his appeal be allowed to proceed. In the future, astute counsel shall argue the defendant's case that the defendant's counsel was ineffective in his performance at the defendant's sentencing. Specifically, the defendant will need the assistance of astute counsel to argue the constitutional issue that his sentencing counsel was ineffective because he failed to move the Court grant the defendant leniency under authority of U.S.S.G. Section 5G1.3, Application Note 2; the defendant's counsel failed to properly argue, under

authority of U.S.S.G., Section 5G1.3, Application Note 2, that the Court should have lowered the defendant's sentence by the time the Court deemed appropriate, as indicated by the sentencing Court's desire that the defendant's "sentence be calculated to have begun on the date that [the defendant was] indicted on the Federal charge." Defendant's Sentencing Hearing, March 28, 2003, pp. 13--14. The defendant's sentencing Judge stated his intention and recommendation twice that: "[F]rom the time you were indicted here I think you ought to get credit for that time." Defendant's Sentencing Hearing, March 28, 2003, pp. 13--14. The defendant's sentencing Judge made this recommendation because he believed this was a just outcome for the defendant. The defendant's sentencing Judge astutely followed the logic of U.S.S.G. Section 5G1.3, Application Note 2, in this matter. It was the duty of the defendant's counsel to be familiar with the voluminous case law concerning this issue of credit for time served because of relevant conduct. The law in this area is exceedingly arcane, but it was the job of a competent attorney to point out that, since the Federal Bureau of Prisons, under authority of 18 U.S.C. Section 3585(b), cannot credit the defendant for the time served since his federal indictment, then the defendant's defense counsel owed a duty to the defendant to elucidate the correct method of effectuating the sentencing Court's wishes that the defendant's "sentence be calculated to have begun on the date that [the

defendant was] indicted on the Federal charge." Defendant's Sentencing Hearing, March 28, 2003, pp. 13--14. Under authority of U.S.S.G. Section 5G1.3, Application Note 2, it was the duty of the defendant's sentencing counsel to move the defendant's sentencing Court thus effectuate its desire that the defendant's "sentence be calculated on the date that [the defendant was] indicted on the Federal charge," by asking the defendant's sentencing Judge to follow the sentencing adjustment recommended by U.S.S.G. Section 5G1.3, Application Note 2, in such cases. In such a case as the defendant's, U.S.S.G. Section 5G1.3, Application Note 2 illustrates, through an example, how to best adjust a defendant's sentence in such a circumstance, to effectuate the wishes of the sentencing Judge. The defendant's counsel was ineffective when he failed to move the Court employ the sentencing method recommended in U.S.S.G. to effectuate the sentencing Judge's wishes. The defendant's counsel was negligent, and he prejudiced the defendant, because his inaction led to the defendant receiving a sentence significantly longer than the sentence the defendant would have received if the attorney had been competent, and had properly moved the Court to effectuate its wishes that the defendant's "sentence be calculated to have begun on the date that [the defendant was] indicted on the Federal charge." Defendant's Sentencing Hearing, March 28, 2003, pp. 13--14. It was the defendant's counsel's duty to notify the Court that the Court's wishes would not

be followed by the Federal Bureau of Prisons, and thus the proper procedure, for the Court under authority of U.S.S.G. Section 5G1.3, Application Note 2, to effectuate its wishes, was to calculate the time between the date the defendant was indicted on the Federal charge (February 3, 2002) and the date the Federal Bureau of Prisons would use as the date of commencement of the defendant's sentence (March 10, 2003). The defendant's counsel should have then moved the Court effectuate its wishes that the defendant's "sentence be calculated to have begun on the date that [the defendant was] indicted on the Federal charge." Defendant's Sentencing Hearing, March 28, 2003, pp. 13--14. The method prescribed under authority of U.S.S.G. Section 5G1.3, Application Note 2, to effectuate the sentencing Judge's wishes in this matter, is for the sentencing judge to state, in his Order of Judgement and Committment, that he is reducing the defendant's sentence in order to effectuate his wishes, using the prescribed method of U.S.S.G. Section 5G1.3, Application Note 2. The prescribed method is for the sentencing Judge to first state what the unadjusted sentence is, i.e., in this case 77 months, and then the sentencing Judge should explain that, because the Federal Bureau of Prisons will not credit the defendant in the manner the Judge desires, the Judge is making a downward adjustment to the defendant's sentence (not a departure), in order to effectuate the prescription of U.S.S.G. Section 5G1.3, Application Note 2. Thus the

sentencing Judge would, in this case, issue a final, adjusted sentence that reduces the defendant's sentence by the approximately 13 months the defendant would not receive credit against his sentence by the Federal Bureau of Prisons. Thus the defendant's counsel proved woefully ineffective by not moving the Court thus reduce the defendant's sentence by approximately 13 months, from a sentence of 77 months, to a sentence of 64 months, in order to effectuate, under authority of U.S.S.G. Section 5G1.3, Application Note 2, the sentencing Court's desire that the defendant's "sentence be calculated to have begun on the date that [the defendant was] indicted on the Federal charge." Defendant's Sentencing Hearing, March 28, 2003, pp. 13--14.

The defendant/petitioner pled guilty to one count of Felon in possession of a Firearm, in violation of 28 U.S.C. § 922(g), and was sentenced by this Court on March 28, 2003, to serve a term of imprisonment of 77 months, to be followed by three years of supervised release. In the ten days after his sentencing, the defendant gave, to his sentencing counsel, explicit instructions to file a notice of appeal. In contradiction to the defendant's express instruction, the defendant's counsel failed to file a direct appeal, despite the specific request of his client. From the date of his sentencing, until the month of January, 2005, the defendant assumed his sentencing counsel was pursuing the defendant's appeal. Only when the Supreme

Court of the United States issued its seminal ruling concerning the Federal Sentencing Guidelines, in Booker, in January of 2005, did the defendant come to fear his counsel had abandoned the defendant's appeal without the defendant's permission. After the seminal Booker decision became the subject of much discussion among prisoners in January of 2005, the defendant tried diligently to contact his sentencing counsel. The defendant had assumed his sentencing counsel was pursuing the defendant's appeal, and the defendant simply sought to understand how the Booker decision would affect his appeal. The defendant called his sentencing counsel's telephone number many times, over a period of several weeks, but he received no answer. After several weeks of receiving no answer from his attorney, the defendant assumed the lawyer had abandoned the defendant. The defendant is unlettered in the law, and so the defendant then sought the help of a "jailhouse lawyer," who then filed the Petition that is the subject of this Motion.

Two witnesses--the defendant's mother, Ethel Matthews, and the defendant's former girlfriend, Alexandria Brown--will testify at an evidentiary hearing that, within the ten days after his sentencing, the defendant told them he had told his lawyer to pursue his appeal.

The defendant has filed a timely Motion, under authority of 28 U.S.C. § 2255, asking the Court to allow his appeal to go forward, because his attorney did not obey the defendant's express instruction to appeal his sentence.

The defendant filed his § 2255 Motion with this Court on Feb. 8, 2005. The defendant filed this Motion very shortly after he discovered, in January of 2005, that his attorney had abandoned his appeal without the defendant's permission. The fact that he was not on appeal came as a great shock to the defendant, witnesses shall testify.

A one-year period of limitation applies to the filing of a motion under § 2255. This "limitation period shall run from . . . the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255. The earliest date on which the defendant could have discovered, through the exercise of due diligence, that his lawyer had abandoned his appeal, was in January of 2005, when the defendant tried to contact his attorney concerning the progress of his appeal, and received no answer. The defendant is a prisoner who assumed his attorney was doing the job he was instructed to do, the job he promised his client he would do. Such an unlettered in the law defendant must rely on his counsel in many such matters.

The defendant is a non-violent individual with a perfect record in prison. He has received no disciplinary tickets; he has "walked away" from all those who would draw him into violent combat. He has been a model inmate. He has had to swim in a sea of sharks without being eaten alive. In prison, he has taken advantage of the rehabilitation programs the prison has to offer, and he has

found comfort and new meaning in his life through the Church, where other like-minded prisoners, who seek to reform themselves, gather together. The defendant, confident his attorney was pursuing his appeal, concentrated on his efforts on his rehabilitation in prison.

The defendant prays this Court shall grant him the relief of allowing the defendant to renew the appeal he believed was in progress.

Respectfully submitted by

Kareem S Matthews

Kareem Matthews

Fed. Reg. No. 05129-070

FCI Otisville

P.O. Box 1000

Otisville, NY 10963

CERTIFICATE OF SERVICE

The petitioner, Kareem Matthews, hereby certifies that he has mailed a copy of the above Motion to Mary E. Rogers, Assistant United States Attorney, at 203 Federal Courthouse, 1 Exchange Terrace, Providence, RI 02903, this 12 day of July, 2005. The above is sworn and attested to by the petitioner, Kareem Matthews.

Kareem Matthews
Fed. Reg. No. 05129-070
FCI Otisville
P.O. Box 1000
Otisville, NY 10963